[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The complaint in this case, dated August 18, 1993, alleges that Zenia Niemierowko died on July 1, 1991, owning an undivided one-half interest in 100 Silver Street in New Britain. It further alleges that on September 20, 1991, plaintiffs Helen Chlasta and Kazimierz Niemierowko were appointed co-executors of Zenia Niemierowko's estate by the probate court for the district of Berlin. It is further alleged that Stefan Adamus died on January 10, 1992, owning the other undivided one-half interest in the premises at 100 Silver Street, and that on February 27, 1992, defendants Donna A. Menard and Christine A. Cordner, Stefan Adamus' daughters, were appointed co-administrators of the Adamus estate. The complaint continues to allege that Helen Chlasta and Kazimierz Niemierowko expended the total sum of $7,944.41 toward the payment of real estate taxes, water and sewer bills, gas, electric, insurance and maintenance expenses necessary to preserve the property, and that one-half of these costs — $3,972.20 — was the obligation of Menard and Cordner as co-administrators of the Adamus estate. The complaint alleges that plaintiffs made demand upon defendants for that amount, but that defendants have failed to pay it. Plaintiffs claim damages of $3,972.20, costs of suit, and attorney's fees.
In the Answer with Special Defenses and Counterclaim dated September 24, 1993, defendants dispute the amounts plaintiffs allege to have expended and deny that they are obligated to pay one-half of any sums which were expended. By way of a special defense, defendants allege that plaintiffs had no authority or permission to perform any of the services for which they now claim compensation. By way of a counterclaim, defendants put forth two claims. They claim first that they themselves performed services in connection with the maintenance, preservation and sales of the property at 100 Silver Street, in the amount of $2,500.00, have made demand for this amount, and been refused. The second claim is that during the administration of the estate, Chlasta and Niemierowko intentionally or negligently caused unreasonable delays in regard to the sale of the subject property, and failed to effectively cooperate with CT Page 8497 Menard and Cordner in connection with the preservation and sale of the property.
Neither side filed any motions addressed to the pleadings prior to trial, which was held on May 26, 1994. Witnesses at the trial included, for plaintiffs, Helen Flis, a real estate agent familiar with the property at 100 Silver Street; Helen Chlasta; and Kazimierz Niemierowko and his wife, Teresa Niemierowko. The defense called Donna Menard. The court will not summarize the testimony given at the trial but has reviewed notes taken during the trial and the evidence admitted. Testimony demonstrated that Zenia Niemierowko and Stefan Adamus had been married and obtained a divorce, each having one-half interest in the property at 100 Silver Street. Much of the testimony, not surprisingly, outlined the differing perceptions of the witnesses as to the claims put forth. Numerous exhibits were introduced into evidence, many relating to expenditures plaintiffs allege to have undertaken. The evidence indicated that the property was sold and the proceeds were shared.
Pursuant to court order, both sides filed initial briefs on June 16, 1994. In their brief, plaintiffs claim reimbursement of $2,642.07, which they claim is half of the amount expended, and compensation of $1,200.00, which they also claim is half of the amount they are entitled to for work performed at the property. Plaintiffs' total claim is for $3,842.07. Plaintiffs state that their claim is based upon "the well established common law proposition that co-owners of real property are jointly responsible for the cost of maintaining the property just as they are jointly entitled to any profit derived from the sale of the property." Defendants' initial brief of June 16, 1994, claims that plaintiffs failed to prove their damages with sufficient certainty. Defendants also claim that plaintiffs' complaint fails to state a cause of action upon which relief can be granted. Both parties also filed responsive briefs on June 30, 1994, further explicating their views. Finally, both parties filed an additional short submission addressing the limited question as to what authority exists supporting plaintiffs' claim that it is a well-established common law proposition that "co-owners of real property are responsible for the cost of maintaining the property. . ."
The court has reviewed its trial notes, the exhibits, and the briefs of counsel, and rules as follows. CT Page 8498
In the court's view, viewed liberally, the complaint adequately sets out a claim for contribution by defendants, equitable in nature. 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 63, "Improvement." At no time prior to trial did defendants file any motions seeking clarification of the complaint, seeking to strike the complaint, or seeking dismissal of the action. The interpretation of pleadings is always a question of law for the court, and the modern trend in Connecticut is to construe pleadings broadly and realistically, not narrowly and technically. Dornfried v. October Twenty-Four,Inc., 230 Conn. 622, 629 (1994). In the court's view, given the history of this dispute, the complaint provided sufficient notice to defendants of the facts claimed so that defendants were in no surprised or prejudiced. Id. Given all the facts and circumstances present in this case, the court concludes that it was or should have been apparent to defendants that an equitable claim for contribution by a co-tenant was what was being asserted. Fowler v. Fowler, 50 Conn. 256 (1852).
The evidence indicated that defendants benefitted [benefited] by some of plaintiffs' actions in that they shared in the sale proceeds, assenting to the sale without objection. Plaintiffs failed to inform defendants of some of their contemplated actions as co-executors, however, and at no time did they seek consent for the actions they undertook, including the making of repairs and the maintenance of the subject premises. At the same time, there is no persuasive evidence that plaintiffs affirmatively prevented defendants from involving themselves in the management of the estate or sought to oust them of possession. What appears to have happened was an unfortunate failure of the parties to communicate. Despite the miscommunication — or lack of communication — there is no evidence that either plaintiffs, or defendants, acted in bad faith.
Generally speaking, it is the settled rule that "when one cotenant has paid a debt or obligation for the benefit of the common property . . . he is entitled as a matter of right to have his cotenants refund to him their proportionate shares of the amount paid . . . ." 20 Am.Jur.2d, Cotenancy andJoint Ownership, § 58. See also Azzolina v. Sons of Italy,119 Conn. 681, 692 (1935). As a general rule, also, a cotenant who has paid taxes is entitled to contribution. Id., § 60. Contribution is also permitted for expenditures for repairs essential
to the preservation of the common estate. Id., § 62. However, CT Page 8499 where a cotenant makes improvements without the consent of other cotenants, where there is no legal obligation to make the improvement, contribution is not necessarily called for. Id., § 63. Sherman v. Congdon, 56 Conn. 355, 359 (1888).
Given all of the facts and circumstances of the case, in the court's view, equitable principles support permitting plaintiffs to recover one-half of those sums which they were required by law to expend, and/or which were necessary to maintaining the property in marketable condition. Cf., Johnson v.Mortenson, 110 Conn. 221, 230 (1929). Stated otherwise, recovery should not be had for expenditures which were discretionary or not necessary given the lack of consent by defendants to such expenditures.
In the court's view, therefore, on plaintiff's complaint, plaintiffs are entitled to recover from defendants one-half of the total real estate taxes paid, water and sewer payments, gas payments, electrical bills, insurance bills, carpentry work and heat repair bills, totaling $5,284.14, or $2,642.07, which the court finds were reasonable and necessary under all the circumstances. In the court's view, under the general principles discussed above, plaintiffs are not entitled to recover anything for amounts claimed by them as compensation.
Defendants' Counterclaims
Defendants' claim that they are entitled to $2,500.00 for maintenance and preservation services performed at the subject premises. This claim is essentially based on the assertion that they are entitled to $40.00 per visit in connection with numerous trips to the premises, and $50.00 each for two occasions of shovelling snow. In the court's view, defendants' claim is substantially inflated. However, because they were not kept actively involved in the management of the estate despite their desire to do so, their decision to periodically visit and inspect the property was understandable and appropriate as a means of remaining involved and protecting their interests. The court finds that defendants have proven by a preponderance of the evidence that, as a matter of equity, they should recover one-half of the amount they claim, or $1,250.00 on this part of their counterclaim. The court finds, applying equitable principles, that it would work a hardship on defendants not to permit them any recovery for work they performed in connection with maintaining the property for the common CT Page 8500 good. 20 Am. Jur., "Cotenancy and Joint Ownership," § 63. Cf.Seidel v. Seidel, 110 Conn. 652 (1930).
With respect to their second counterclaim, the court finds that defendants have failed to prove by a preponderance of the evidence that Chlasta and Niemierowko intentionally or negligently caused unreasonable delays with regard to the sale of the subject property. Helen Flis testified to the contrary. This counterclaim is therefore denied.
Summary and Conclusion
All claims for costs and attorney's fees are denied as not being warranted given the circumstances of this case.
Judgment shall enter on behalf of plaintiffs in the amount of $2,642.07; and for defendants on their counterclaim in the amount of $1,250.00[.]
DOUGLAS S. LAVINE JUDGE, SUPERIOR COURT